Case 16-6597, Randall Mills v. Weakley Barnard, et al. Oil argument not to exceed 15 minutes per side. When ready, Mr. Wall for the appellant. Good morning. Michael Wall for the appellant. Randall Mills, I'd like to reserve three minutes of my time. Very well. Thank you. Mr. Mills is appealing the dismissal of his civil rights complaint under Rule 12b-6 for failure to state a claim. I know the court is familiar with the complaint, but just briefly, he was convicted of some very horrendous crimes in state court, specifically penile rape of a 12-year-old girl, aggravated sexual assault, and casual exchange of marijuana. Later DNA testing revealed that he was excluded as a perpetrator and he was released from custody after 11 years in a maximum security prison. The complaint against several defendants involved in his prosecution was dismissed, as I said. On appeal, we have narrowed the case to one defendant, that being Sharon Jenkins, the DNA analyst with the Tennessee Bureau of Investigation. You haven't appealed the dismissal as to all the other defendants? We have not. In fact, our notice of appeal specifically said it was just as to Ms. Jenkins. And we further narrowed it to three specific legal claims in her individual capacity. A Fourth Amendment claim for what the court calls malicious prosecution, a 14th Amendment claim for fabrication of evidence, and a 14th Amendment claim for withholding of exculpatory evidence, or a Brady claim. The legal viability of these claims really is not in serious dispute. This court in Gregory v. City of Louisville, a reported decision from 2006, addressed the same three legal claims against a forensic examiner. And it held explicitly that these are legally viable claims. So I don't think there can be any question that we've pleaded viable claims. But there is some dispute about what the facts of the case are. And I don't think Ms. Jenkins has really credited the allegations in our complaint, so I'd like to touch on some of the most important points. The evidence against Mr. Mills was essentially the victim's accusation and then the DNA analysis done by Sharon Jenkins. She prepared a written report for the prosecution. And the DNA analysis was really more important because the accusation standing on its own was not particularly trustworthy. It was coming from a 12-year-old, and as this court has held in other cases, typically the uncorroborated allegations of a child are not sufficient to establish probable cause. Here they were, right? Probable cause was determined even before the DNA report was submitted, right? Well, an indictment was returned, so then that's a finding. Yes, before the DNA report came in, right? Correct. So in this case, there is a finding that the child's testimony alone was sufficient for probable cause? Based on whatever was before the grand jury at the time. But our theory of the case is that, yes, there was that finding. Subsequent to the superseding indictment, then we have Ms. Jenkins performing her DNA analysis. And we're alleging that her own results from that DNA analysis excluded Mr. Mills as a perpetrator and therefore dissolved probable cause. And that was the same theory of the case in Gregory, which the court said was sufficient to make out claims. But the DNA analysis was extremely important at the trial, especially because her story, the alleged victim's story, would change materially over time. For instance, she first alleged that he fondled her. And then when they found semen in her underwear for the first time, she alleged that he raped her. A pretty big omission from the first accusation against him. She alleged that he gave her Valium, but her toxicology report showed that she didn't have any Valium in her system. So these circumstances, and I don't know that all of those were before the grand jury, those circumstances we've alleged suggest that even standing on its own, probably the victim's accusation wouldn't have probable cause. I mean, there's a finding already, so I don't know why you would argue that. There's a finding there was probable cause before the DNA tests. So you could say maybe it shouldn't have been made, but it was. Those are the facts. I only mean to say that whatever kind of value that her accusation had in terms of establishing probable cause, it was so minimal that by the time the DNA analysis came out and her results showed that they excluded Mr. Mills, there was no possible way probable cause could have existed at that point going forward. And therefore probable cause would have dissolved. That's our theory of the case. But I also want to make the point, because Ms. Jenkins has said in her briefs that her opinion was, I don't know, noncommittal or was kind of wishy-washy, but her report, as we've alleged, said that there was only a 1 in 290 chance that the DNA in this underwear could have come from any Caucasian besides Mr. Mills. That's very definitive. That's like saying there's a 99.7% chance. Is that really the way she stated it? Because we've had other cases, and I've been on them, where that's just not the way you can say it. You could say one out of every 290 people would have this marker. Well, I have it right here. It may be that bad. I didn't focus on it because that's just not the way the law says. But what page would I look at if I wanted that? Well, we don't have the report in the record because it's just a motion to dismiss. Paragraph 46 of the complaint summarizes the DNA report. Okay, so you said that. I did see that, and in fact I kind of balked at it. So that's not in the record. So that gets us to kind of the issue here, really, which is this is 12B6. And so we have to take everything you've said here as essentially correct. And we really have two questions. Number one, did you plead knowingly or knowingly or recklessly or whatever the standard is with those words? And secondly, can you meet the Iqbal Twombly that this is more than mere speculation? So if I give you the first point for the moment, what would you point to in the complaint as your best statement of factual matter that would raise it above the level of speculation? Because obviously we know that DNA evolves and improves. And she says, presumably now she's saying that her report was accurate and they just did a better job of testing. So what factual material is there in the complaint that you would point to as your best evidence to raise it above the level of speculation? Well, for each of the three claims, I'd probably cite different paragraphs. But the most important things overall would be probably the following. We've alleged in, for instance, paragraphs 65, 87 and 96 that the defendants, and of course that would include Ms. Jenkins, deliberately fabricated evidence. And of course most of the complaint is talking about Ms. Jenkins' DNA report, so that's what it's referring to. I would point out, though, that not all of these claims require that kind of state of mind by Ms. Jenkins. For instance, a Brady claim, that could be an inadvertent failure to disclose exculpatory evidence. But we have, though, directly alleged an intentional fabrication of evidence and withholding of exculpatory evidence. But have you done it? I mean, under Trombley, conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. You actually have to have a factual basis that's plausible. And I can see that you've alleged the words that she intentionally withheld this. But I don't see any factual basis other than the legal conclusion that is not sufficient under Trombley. Well, as to her state of mind, assuming it's even relevant to a particular claim, and I don't think it's relevant to all of them, Rule of Civil Procedure 9b says that when you're pleading a state of mind, you can do that generally. And the reason is, you can't do much more than, say, defend an ex, you know, did it intentionally or recklessly or whatever it is, because you can't really, you know, you have to prove that with other things at trial. But we've met our burden. So you can always go to trial when you're alleging a state of mind? I don't think every time you allege impermissible intent on the other side, you're entitled to a jury trial. Is that, but is that your position? I think we're entitled to get past the motion to dismiss because 9b says that we are allowed to plead it generally. Under Trombley as well? Under Trombley? Trombley I don't think abrogated or overruled 9b in the rules. It interpreted, I think. I think Trombley was interpreting, I guess it's Rule 8, which is the general requirement of a short and plain statement. I don't think it really affected that 9b pleading standard, which is in terms of someone's state of mind. But I will go ahead and say that we did plead more than just she did it intentionally. I mean, we've alleged in here, in paragraphs 47 and 49, that her own test results were exculpatory. So if her own test results are exculpatory and we're further alleging that she reported that he did it, or at least there's only a 1 in 290 chance that someone else did it, that's well above, I think, what our standard is to show that she's done something egregious. Well, I mean, her testimony was that they were inconclusive. Your opinion is that they were exculpatory. I mean, I assume at the trial, if that were true, I mean, the defense could have hired a DNA expert, examined the DNA evidence, and challenged her opinion. I mean, what I see you're doing is you disagree with her opinion that she made in 1999, and then you say, well, it was a wrong opinion, so therefore, you know, she must be liable here. But the fact that they make an erroneous opinion I don't think gives you a cause of action, that's all. You need more than that, and you need to plead more than that. Well, maybe not any mistake would create liability, but I think we have pleaded a lot more than that. I mean, all you have is speculation that she made a mistake in the DNA, and she should have known better, and therefore, she should be liable. And then your results are 10 years later after this, when you have more scientific bases of DNA analysis than they had in 1999, and you're comparing the future standard of DNA with the past standard of DNA, and to say that she should have done better, and then trying to hold her liable in a 1983 case. Judge Griffin, I don't think that's actually what our complaint says. We've alleged that when the retesting did, it was on the same piece of physical evidence. You had better testing procedures. Did you not in 2000? When was the retesting done? Retesting, I think, was done in 2013. Okay. Well, the trial was in 2000, and I think the DNA testing had issue was 1999. 2013, I mean, the science of DNA had advanced quite a bit since 1999, had it not? Counsel, doesn't paragraph 61 say they used the same analytical techniques? It does, and that's what I was hoping to get to, which is private laboratory tested the same portions of the same pair of underwear using the same techniques. Came to a different opinion. Well, I would say it came up with different results, but we've alleged that her own results were scalpatorial. Came up to a different opinion. I think she testified, she would still express the same opinion about the evidence she had. Did she say, I mean, of course that's not in the complaint either way, is it? Testified in that, or have we got the record in the record? You allege that she was, even at that point, she was sort of trying to cover it up, right? I think that was a fair inference. If you've done something, as we've alleged, deliberately to convict somebody, it's not surprising that even at a later time you would say, you stick to your guns and say I did it the right way. Do you have, I mean, I guess if it's not in the record, we can't get in the record. What was in the record was your complaint says she said she had never made a mistake, but you say that later she denies there was any mistake, but it's not in the record. Is that the right answer? I think if I understand the question, they would never even allow that there was even a mistake. I mean, at 103 she says not only this wasn't a mistake, she never made a mistake in her career. So if the facts are different, you might think it would be deliberate. But we can look at that some more. Well, and I know my time is up, but I would just, if I may, just briefly, most of my opponents' brief has to do with matters outside the record, as I think the Court has observed. And a lot of this has to do with the state criminal proceedings in the record there. But we would just ask the Court to evaluate our complaint based on the record in this case, which is just the complaint. Presumably all of that other stuff could come in at a summary judgment stage. For whatever it's worth. I mean, the focus in this case, of course, is going to be a little different. It has to do with the DNA, but we're interested in proving fault by the DNA analysis. Back in the other proceeding, they were mostly concerned with just getting him out of prison. So yes, it could possibly come in, but it's not controlling right now. Very well. Thank you. You'll have your rebuttal. Thank you. Is this good? Can you hear me now? Okay. I'm a little bit shorter than Mr. Wall. Sorry about that. Good morning, Your Honor. Stone Jordan here on behalf of Defendant Sharon Jenkins. This Court should affirm the dismissal for two reasons. One, the malicious prosecution claim fails because Ms. Jenkins did not participate in the decision to prosecute and the indictments established the probable cause. Two, the Brady and fabrication of evidence claims fail because plaintiff did not raise those claims until this appeal. As to Brady, there are no allegations that Jenkins actually withheld any evidence and plaintiff could have requested his own DNA testing at any time. There are no allegations that Ms. Jenkins actually participated in the decision to prosecute. As this Court recently noted in King v. Harwood, where there are no allegations that the defendant set the prosecution in motion or participated in the ultimate decision to prosecute, there is no malicious prosecution. Well, here clearly the activities were set in motion. There's a question about maintaining the prosecution and your adversary cited the Gregory case on that aspect. Does that change it at all or do you say that once the initial grand jury occurred, then nobody, no matter how badly they did anything, could ever be liable? Gregory does not help the plaintiff for these reasons. The court in Manuel v. City of Joliet made it clear that the issue is continued detention without proper legal process. In Gregory, this is the timeline. There was a preliminary hearing at court that established probable cause. Then there was the hair analysis and then there was the indictment that superseded the preliminary hearing that established probable cause. And the probable cause that supposedly dissolved was that that was established at the preliminary hearing. The indictment that superseded the preliminary hearing was therefore tainted and was not a proper legal process to continue the detention of the plaintiff. That is not the case in this particular case. Here there are no allegations that there were fraudulent misrepresentations prior to the indictments. And also, as this court noted in King v. Harwood, where the allegedly fraudulent evidence is not material to the indictment, and here it wouldn't have been, then the plaintiff would not be able to prove probable cause absent the evidence. And so here we have two indictments that occurred prior to the DNA test, and therefore, regardless of the DNA test, the indictments themselves were proper, the legal process was proper, and so there was probable cause. Going back to the decision to prosecute, that's a separate factor, and Gregory Nowhere addresses that particular factor in its opinion. And here there are no allegations that Defendant Jenkins actually set the prosecution in motion or was involved in the ultimate decision to prosecute. All of the cases that plaintiffs cite to allege lack of probable cause after indictment relate to allegedly fraudulent events that occurred prior to indictment and were part of obtaining the indictment. That's not the case here. Now, as to the Brady and fabrication of evidence claims, there is a requirement that there be notice of those claims, but the only claim that was apparent from the complaint was the malicious prosecution. There was no notice that plaintiff was alleging a 14th Amendment due process Brady or fabrication of evidence claim. Nowhere does plaintiff mention a 14th Amendment due process claim. The only mention of due process at all is in paragraph 87, and that is in the context of an alleged improper seizure in violation of the 4th and 14th Amendments. There's no other mention of due process. There's no mention of Brady at all. The only mention of withholding evidence relating to the DNA is in the context of D.A. Bernard withholding evidence. There's nothing to indicate that defendant Jenkins actually withheld any evidence. And there are two paragraphs, paragraph 49, where plaintiff alleges that D.A. Bernard withheld the inconclusive test results and implies that the fact that they were inconclusive was itself exonerating, and paragraph 96, which alleges suppression of the exonerating DNA evidence, but does not connect Jenkins to that suppression. The only connection is to D.A. Bernard withholding evidence. Plaintiff never mentioned a Brady claim in his response to the motion to dismiss, other than claiming a Brady claim in terms of an injunction. There's no mention of a monetary damages claim for Brady or fabrication of evidence. This case thus differs from Snow v. Nelson. In Snow, this court noted that plaintiff did not plead a Brady claim, but in Snow, the Brady claim was specifically mentioned in the motion to dismiss, and both parties briefed the claim. That's not the case here. There's no mention of fabrication of evidence in relation to Ms. Jenkins. Nowhere in the complaint does plaintiff ever use or say the words fabricate, manufacture, knowingly, intentionally, in connection with the D.A. evidence and in connection with Ms. Jenkins. A quick rundown of the allegations with respect to that. Paragraphs 46 and 47 merely state that later expert analysis revealed that the DNA was actually exculpatory. Paragraph 49 accuses D.A. Bernard of withholding the inconclusive test results. Paragraph 54 just involves Ms. Jenkins' testimony. There's no mention of fabrication. It does not mention Jenkins, but only her testimony, and there would be immunity from that. Paragraphs 62 and 56 talks about the evidence that disproved the testimony. It was known to the defendants, plural granted, but that refers to all the defendants. Specifically 62 talks about Jenkins mislabeling the DNA, and 65 talks about Jenkins misidentifying segments in order to support and maintain the guilty verdict, which sounds pretty specific, doesn't it? With respect to 65, that is a very unclear paragraph in particular. That involves events that occurred after Siri became involved, and therefore after the guilty verdict. The DNA test occurred, of course, prior to the trial and prior to the guilty verdict. There would not have been a mislabeling or misidentification after the guilty verdict, but that particular paragraph accuses D.A. Bernard of hypothesizing that men had masturbated and handled the underwear prior to sending it to Siri. Right, although it says even though evidence had already been presented that Jenkins had misidentified segments in order to support and maintain the guilty verdict, which, I mean, she only identified, whatever she did, she did it before, right? She may have testified in later state proceedings, but the question of whether when she looked at the DNA, and she said incomplete because she wanted him to be convicted, rather than telling the truth in their view, that it said at that time something different that would have exculpated him. Okay, and I think that the only way that this particular paragraph makes any sense, I think, is that since it discusses events involving Siri, that what they're referring to is that the evidence that was presented to, that defendant Jenkins had misidentified the DNA was the Siri results that were presented that supposedly showed that she had misidentified the DNA. She had what? I'm sorry, I'm not speaking into the microphone, I apologize. The only way that this paragraph makes any sense, it involves events that occurred after the DNA evidence and after the guilty verdict, and the Siri results, according to plaintiff, show that defendant Jenkins had misidentified or misinterpreted the DNA evidence, and that that was the evidence that was presented to her, the Siri results. This particular paragraph, of course, refers to events that occurred after the guilty verdict. There was no guilty verdict to support and maintain at the time that defendant Jenkins did her results and did her DNA test. Counsel, let me ask you generically. We're at the 12B6 stage, so there's a question of interpretation and granting all the things in favor and so forth. In an attack on forensic errors or evils, we know there have been cases of technicians just making stuff up. What should a person allege at a stage when they don't have any more than the later results in order to proceed against a lying technician? Is it that they just didn't do it quite well enough here, or is it that you have to get the discovery first in order to have enough facts to put in your complaint? What do you think is the state of the law? As Judge Griffin indicated earlier, there has to be something more than mere speculation, and here there's just speculation. But going further than that... I'm asking you that in general, if you really have a case where the technician made stuff up and later you discover it, that's not common, but it happens, and then you come in, what do you put in a complaint that says  it's just speculation, because until you get the discovery in these kinds of cases, until you can make them produce the documents or try to get it or depose them, what can you do? Or the other side of it is to say, well, if you say that we used the same techniques, because at least for me, on the factual basis, that's fairly important, because frankly, I went into this case thinking some of the same things Judge Griffin just said, but at least that allegation, which we don't know until we get more, doesn't that raise it above the level of just mere speculation? I wouldn't necessarily agree with that, but I would go further and say that there has to be notice that there's a 14th Amendment claim, and nowhere in the complaint is there alleged a 14th Amendment due process claim. There's only one mention of due process, and again, it's in paragraph 87, and that is in connection with a 4th and 14th Amendment claim, which is malicious prosecution. So there was no notice that the plaintiff was actually alleging any 14th Amendment claims as to Ms. Jenkins or to any of the defendants, but sticking to just Ms. Jenkins. And of course, in their response to the motion to dismiss, there's no mention of fabrication of evidence claim at all. In the response to dismiss the injunctive relief, plaintiff does mention there was a presentation of a false DNA test, but it is not clear what plaintiff meant by that, particularly if you refer back to paragraph 49, which accuses D.A. Bernard of withholding the inconclusive test results. Never is there any mention, or never did they ever say that defendant Jenkins withheld anything. And it's important to note the one locus where Jenkins found a match, plaintiff's expert agreed that it could have been the right answer, there was no fabrication. But that's summary judgment stuff. Okay. I suppose agree isn't quite the right word here, but just to be clear, since we don't have the actual report in the record, to the extent that they allege that rather than saying that one person out of 290 in the whole population have this allele, she said there's only one chance in 290 that it's not Mr. Mills. Is that a fair statement? I'm sorry, I didn't mean to interrupt you. I will concede that is what they say in the complaint. That's not really right statistically and D.N.A. wise. It is not. That's not how it is normally presented. I can't go outside the record and say, but that's what they said. That's what they alleged, yes, Your Honor. Any other questions? I have none. Thank you, Ms. George. Thank you. To pick up where Judge Boggs left off, I'm looking at the report. It's outside the record, but I can represent to the court that our complaint... Mr. Gordon says you have not alleged a Brady complaint or Brady claim against Jenkins. You have headings here. You have fifth claim, fourth claim, third claim. I don't see a Brady claim either, and you've got them all categorized and stuff. Tell me which heading, one through five, do you allege a Brady complaint against Jenkins? We could have done a better job of... No, just tell me where you did. I know you could have done a better job, but... Under which heading is the Brady claim? One through five. Well, under the second claim, that alleges a violation of the 14th Amendment, which is where the Brady claim is located. Did you mention Brady there? Second claim, you've got two paragraphs. Conduct of defendants... When paragraph 95 under the third claim says a violation of the 14th Amendment... That's the second claim. You said Brady is under the second claim. You only have one paragraph, so where is it in paragraph 93? We didn't plead case law. I recognize that. But we did say it's a 14th Amendment violation, and we did say that his malicious prosecution and wrongful conviction is the nature of a Brady claim. Brady is withholding evidence. And where does paragraph 93 say that Jenkins withheld evidence? I'm not sure that paragraph 3 says it in those terms, but it does incorporate... Okay, so it's not included in the second claim, so that's out. Is there another claim that Brady is included in against Jenkins? And tell me where. If I could refer the Court to paragraph 92, which says the second claim incorporates by reference all the preceding allegations. We've alleged numerous times in the complaint, for example, in paragraph 87, that there was the intentional misrepresentation of knowingly false and inculpatory evidence, as well as... You think that puts them on notice that you filed a Brady claim against Jenkins, and you have to give reasonable notice to a defendant that she is defending a claim, and you think that's reasonable notice? I do for two reasons. First of all, the District Court knew it was there because the District Court sua sponte. They didn't move to dismiss it, but the District Court says, I recognize this complaint contains a Brady claim. And then it went ahead and dismissed it. Against Jenkins? Yes. And you argued in response to the motion dismissed that you had a Brady claim against Jenkins? Because she said you did not. I mean, I'll check the record, but... We have a citation to this in one of our briefs. I think it's probably in a reply brief. It says, of course, we didn't elaborate because they never moved to dismiss the Brady claim, but we didn't mention that there was a... You did or did not mention in response that you had a Brady claim against Jenkins? In the response to the motion to dismiss, and we have a citation to this, I believe, in our appellate reply brief, it was mentioned, it was not analyzed in great detail because they never moved to dismiss it. But the District Court did pick up on it and did analyze it and dismissed it. I think if there's a procedural issue here, if anything, it should be us saying they didn't move to dismiss this claim and the District Court did it sua sponte. We haven't made that objection, but I don't understand how Ms. Jenkins can object when it was apparent to the District Court we had this claim that we didn't properly plead it. When you say they didn't move to dismiss this claim, how did they distinguish? That is, I thought they moved to dismiss all claims. Well, they did, but then they said, here are the claims and here are arguments as to each particular claim, and the Brady claim was not alluded to. Well, because they didn't know you had a Brady claim because you didn't specify it. I mean... Then the court said, I think there's a Brady claim. Yes, there is a Brady claim, and this is why it's dismissed. And so, of course, we have to appeal that because now it's dismissed. But we think they had fair notice. If the District Court had fair notice, then Ms. Jenkins, we think, had fair notice. But there's no question... Were you going to say something about the third claim? When Judge Griffin asked you, where's your claims, we got into the second, but I thought you were about to mutter about the third, but I could be wrong. Sure. Well, the third claim also refers to a violation of the 14th Amendment in the heading as well as in paragraph 95. Paragraph 96 says, That's in 96 you're reading from, right? That's correct. So, I'm out of time, but if I could just say one thing to wrap up. As far as the legal viability goes, this case is on all fours with Gregory. Every issue that's been discussed today about whether this is a viable claim was addressed in Gregory, and we believe that is controlling law. As to the plausibility of our allegations, it's all in here. To the extent that the court would require us to plead more, I'm not sure what more we can do besides saying we have our own expert. He said it clearly excluded Mr. Mills. If we have to attach an expert report to the complaint, I think that would be tantamount to requiring us to plead evidence, which Twombly says is still not required for us to state a claim. So, for those reasons... Thank you, Mr. Wall. Thank you, Mr. Wall. Case will be submitted.